UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | | |
|---|---|---|
| DEBRA A. JONES, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 4:14 CV 1519 RWS |
| | ) | |
| MINACT, INC., | ) | |
| | ) | |
| Defendant. | ) | |

# **MEMORANDUM AND ORDER**

Plaintiff Debra Jones was employed by Defendant MINACT, Inc. at its St. Louis Job Corps Center. In the spring of 2014, MINACT terminated Jones' employment. Jones filed this lawsuit alleging that MINACT fired her based on her age in violation of the Missouri Human Rights Act, § 213.010. et seq. Jones also asserts a claim under the Missouri Service Letter statute, § 290.140 for MINACT's failure to provide Jones with a service letter after her termination. MINACT filed a motion for summary judgment on Jones' age discrimination claim and for partial summary judgment on Jones' service letter claim. Because Jones has failed to provide admissible evidence to support her age discrimination claim, I will grant MINACT's motion for summary judgment. I will also grant MINACT's motion for partial summary judgment on Jones' service letter claim.

*Background*

Defendant MINACT does business in Missouri as the St. Louis Job Corps Center. Jones was employed by MINACT as a Residential Advisor at the Center from September 1995 through March 2014. Within the first nine days of March 2014, three students filed statements / reports that they had observed Jones purportedly sleeping while on duty at the Center on March 1, 2014. One of the students, Felicia Leck took pictures of Jones purportedly sleeping. Leck also reported that on March 2, 2014, Jones "barged" into her room and repeatedly demanded to see the pictures Leck had taken of Jones. Leck states that she finally gave into Jones' demand because Jones would not leave the room until she had seen the pictures.[1]

Sleeping on duty is a violation of the Center's Human Resources Work Rules Policy § 801:2(11) which can result in termination. Intimidating, threatening, or otherwise wrongly interfering with a student is also a violation of the Center's Human Resources Work Rules Policy § 801:2(10) which can result in termination.

On March 11, 2014, MINACT terminated Jones' employment effective March 12, 2014. Jones was 53 years old at the time. The decision to terminate

---

1. Jones filed a motion to strike these reports (MINACT's exhibits D,E,F, and H) asserting that they are hearsay and cannot be used to support MINACT's motion for summary judgment. I will deny the motion. These records are admissible for two reasons. First, they are not offered for the truth asserted in the reports, that Jones was actually sleeping and demanded to see the photographs. They are offered to explain why MINACT's management decided to terminate Jones' employment. Second, these reports are collected and maintained in the ordinary course of MINACT's business and are admissible as business records.

Jones' employment was made by two administrators who report to MINACT's headquarters in Jackson, Mississippi: Karen Stuckey, the Executive Director of Human Resources, and Delois White, the Vice President of Operations.  Stuckey and White reviewed the three students' reports and the pictures taken by Leck. They found the students' claims to be credible.  Neither Stuckey nor White knew Jones' age or consulted any records which identified her age prior to her termination. Jones' employment responsibilities were assumed by a 45 year old male employee.

*Legal Standard*

Summary judgment is appropriate if the evidence, viewed in the light most favorable to the nonmoving party, demonstrates that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Lynn v. Deaconess Medical Center, 160 F.3d 484, 486 (8th Cir. 1998)(citing Fed. R. Civ. P. 56(c)).  The party seeking summary judgment bears the initial responsibility of informing the court of the basis of its motion and identifying those portions of the affidavits, pleadings, depositions, answers to interrogatories, and admissions on file which it believes demonstrates the absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).  When such a motion is made and supported by the movant, the nonmoving party may not rest on his pleadings but must produce sufficient evidence to support the existence of the essential elements

3

of his case on which he bears the burden of proof. Id. at 324. In resisting a properly supported motion for summary judgment, the plaintiff has an affirmative burden to designate specific facts creating a triable controversy. Crossley v. Georgia Pacific Corp., 355 F.3d 1112, 1113 (8th Cir. 2004).

Direct evidence of employment discrimination is rare, therefore, most cases rely on circumstantial evidence. In the absence of direct evidence of discrimination, courts employ the burden shifting analysis of McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973)(Title VII case).[2]

Under the burden-shifting analysis, the plaintiff must first establish a prima facie case of intentional discrimination. McDonnell Douglas, 411 U.S. at 802; Bashara v. Black Hills Corp., 26 F.3d 820, 823 (8th Cir. 1994). If the plaintiff establishes a prima facie case, a presumption of discrimination is established and the burden of production shifts to the defendant to articulate a legitimate, non-discriminatory reason for the adverse employment action. 411 U.S. at 802. The defendant need not persuade the court that the articulated reason was the basis

---

2. Jones argues that the McDonnell Douglas framework is no longer appropriate to use in analyzing MHRA cases citing Korando v. Mallinckrodt, Inc., 239 S.W.3d 647, 649 (Mo. Ct. App. 2007) (concluding that the Missouri Supreme Court abrogated the use of the McDonnell Douglas test for MHRA cases in Daugherty v. City Of Maryland Heights, 231 S.W.3d 814 (Mo. 2007)). However, the United States Court of Appeals for the Eight Circuit continues to employ the procedural McDonnell Douglas framework for MHRA cases adjudicated in federal court. See Hawks v. J.P. Morgan Chase Bank, 591 F.3d 1043, 1049 (8th Cir. 2010) and Riley v. Lance, Inc., 518 F.3d 996, 1000 (8th Cir. 2008). Because the McDonnell Douglas framework governs federal procedure it will be used in analyzing MINACT's motion for summary judgment. However, even if Missouri's state court procedure is used to analyze whether summary judgment should be granted in this case, summary judgment would still be appropriate because Jones has failed to provide evidence that similarly situated younger employees were treated more favorably than Jones. In other words, Jones has failed to provide admissible evidence that would support her claim that her age was a contributing factor in MINACT's decision to terminate Jones' employment.

of the employer's action; rather, it must simply provide some evidence of a non-discriminatory reason or reasons for its action. St. Mary's Honor Center v. Hicks, 509 U.S. 502, 509 (1993).

Upon the proffer of such evidence, the presumption of discrimination established by the prima facie case "simply drops out of the picture." Id. at 510-11. The burden then shifts back to the plaintiff to prove that the reason articulated by the employer was really a pretext for discrimination. Aucutt v. Six Flags Over Mid-America, Inc., 85 F.3d 1311, 1316 (8th Cir. 1995). A rejection of the employer's proffered non-discriminatory reason by itself or combined with elements of the prima facie case may be enough to establish, but does not compel, an inference of intentional discrimination. St. Mary's Honor Center, 509 U.S. at 511.

The burden of proving discrimination remains on the plaintiff at all times. Id. at 515-16. It is not enough to merely discredit defendant's articulated reason for the adverse employment action. A plaintiff must always establish that the real reason for defendant's action was impermissible discrimination. Id.; see also Huston v. McDonnell Douglas Corp., 63 F.3d 771, 777 (8th Cir. 1995). To avoid summary judgment, a plaintiff must present evidence that, when viewed in its entirety: (1) creates a fact issue as to whether the employer's proffered reason is pretextual, and (2) creates a reasonable inference that a discriminatory motive was a

determinative factor in the adverse employment decision. Rothmeier v. Investment Advisers, Inc., 85 F.3d 1328, 1336-37 (8th Cir. 1996).

*Analysis*

MHRA age discrimination claims are analyzed under the same framework used in age discrimination claims under the federal Age Discrimination in Employment Act (ADEA), 29 U.S.C. §§ 621 - 634. Ramlet v. E.F. Johnson Co., 507 F.3d 1149, 1152 (8th Cir. 2007). To establish a prima facie case of age discrimination Jones must show that: (1) she was at least 40 years old; (2) she was terminated; (3) she was meeting her employer's reasonable expectations at the time she was terminated; and (4) she was replaced by an individual who was substantially younger.[3] Id. at 1153.

Jones cannot establish a prima facie case of age discrimination because MINACT believed that Jones was not meeting MINACT's reasonable expectations. MINACT determined that Jones was sleeping while on duty and inappropriately confronted a student, both actions were in violation of MINACT's work rules. Moreover, the individual who assumed Jones' duties, a forty-five year old male, was within the same protected age class as Jones. The eight year age difference between Jones and her replacement is not enough of a difference to support a claim

---

3. The ADEA and the MHRA statutes differ in that under the ADEA age must be the "but for" cause of the adverse employment action while under the MHRA statute, discrimination can be established if age is a "contributing factor" for the adverse employment action. Clark v. Matthews International Corp., 639 F.3d 391, 398 (8th Cir. 2011).

of age discrimination. Chambers v. Travelers Companies, Inc., 668 F.3d 559, 566 (8th Cir. 2012) (an eight year age difference is not "sufficiently younger" to support an age discrimination claim).

Even if Jones could establish a prima facie case, her claim would fail because MINACT provided a legitimate, non-discriminatory reason for terminating Jones' employment. MINACT's administrators believed the students' statements that Jones was sleeping on the job. They also believed the claim that Jones barged into a student's room and demanded to see the photographs the student took of Jones purportedly sleeping. Because MINACT has provided a non-discriminatory reason for terminating Jones' employment, any presumption established by a prima facie case is refuted and the burden shifts back to Jones to prove that the reason articulated by MINACT was really a pretext for age discrimination. Aucutt v. Six Flags Over Mid-America, Inc., 85 F.3d 1311, 1316 (8th Cir. 1995). The burden of proving discrimination remains on Jones at all times. St. Mary's Honor Center, 509 U.S. at 515-16. It is not enough to merely discredit MINACT's articulated reason for the adverse employment action. Jones must establish that the real reason for MINACT's action was impermissible age discrimination. Id.

At this stage of this case, Jones must offer some evidence to support her claim that her termination was based, at least in part, on her age. In an effort to undermine

7

MINACT's reason for letting Jones go, Jones denies that she was sleeping on the job or that she barged in to a student's room. To counter the claim that she "barged in" Leck's room Jones submitted information suggesting that Leck's door lock was broken around that time. Jones argues that, as a result, she could not have used a key to "barge" into Leck's room. She argues that she would have had to knock on the door and be admitted by Leck. The evidence of whether the lock was actually broken and how or whether Jones barged in the student's room is not relevant. Nor is the issue of whether she was actually sleeping on the job or not. The relevant issue is whether the MINACT administrators engaged in age discrimination in their decision to fire Jones. The administrators, Stuckey and White, undisputedly relied on the statements made by the students in reaching their decision to terminate Jones' employment. The administrators found the students' statements credible. Whether the students were mistaken or whether Jones believes that the administrators should not have believed the students does not create an inference of age discrimination. Stuckey and White made a business decision based on the evidence before them. <u>Twymon v. Wells Fargo & Co.</u>, 462 F.3d 925, 935 (8th Cir. 2006) ("A proffered legitimate, non-discriminatory reason for termination need not, in the end, be correct if the employer honestly believed the asserted grounds at the time of the termination."). Federal courts do not have the authority to "sit as

super-personnel departments reviewing the wisdom or fairness of business judgments made by employers, except to the extent that those judgments involve intentional discrimination." Huston v. McDonnell Douglas Corp., 63 F.3d 771,781 (8th Cir. 1995). As a result, Jones' arguments that she was not asleep on the job and that she did not barge into the student's room do not create an inference that one of the reasons she was fired was her age.

In an effort to establish her discrimination claim, Jones asserts that she was treated differently than similarly situated younger workers. Another Job Corps Center residential advisor, William Jenkins, stated in a deposition that he observed Tiffany Turnage, a substitute residential advisor, age 39, sleeping on the job in January 2014. Jenkins stated that he reported the incident to his supervisor. Turnage was not terminated (it is unclear from the record whether she was otherwise disciplined).

The individuals used as comparators to a claimant in an effort to establish a discrimination claim "must have dealt with the same supervisor, have been subject to the same standards, and engaged in the same conduct without any mitigating or distinguishing circumstances." Gilmore v. AT & T, 319 F.3d 1042, 1046 (8th Cir. 2003).

Jones and Turnage were not similarly situated employees. Turnage was a

9

substitute residential advisor, Jones was a Residential Advisor II. While both Jones and Turnage were allegedly sleeping on the job, Turnage was not also accused of intimidating a student. Both Stuckey and White, the decisionmakers who terminated Jones' employment, state that they never received a report alleging that Turnage had been sleeping while on duty. Nor had they ever received a report that Turnage had intimidated a student.

Similarly, Jones speculates that two other younger employees slept on the job: Tinas Davis, age 45, Residential Living Night Supervisor; and Gregory Voltaire, age 43, Night Residential Advisor. Jones testified in her deposition that she saw these employees on a surveillance camera recording going individually into the "independent living room" for several hours during their shift. She did not see what they did there but speculates they were sleeping. Jones' belief that these employees were sleeping on the job is pure conjecture. The record does not contain any evidence that these employees were sleeping on the job beyond Jones' unsupported guesswork. Moreover, neither of these employees had been accused of inappropriately intimidating a student. Both Stuckey and White state that they never received a report alleging that either Davis or Voltaire had been sleeping while on duty or intimidated a student. As a result, neither Davis nor Voltaire are similarly situated to Jones.

Jones alleges that she observed another employee, Tracy Moore, a Residential Supervisor, age 39 to 40 at the time, sleeping on the job in a hallway at work, in February 2009, five years before Jones was fired. In her deposition, Jones stated that she had no personal knowledge of what discipline, if any, Moore received. There is no evidence in the record that Moore was also accused of intimidating a student. Both Stuckey and White state that they never received a report alleging that Moore had been sleeping while on duty or intimidated a student. As a result, Moore is not similarly situated to Jones.

Jones also offers a few other names of younger employees who she claims may have been sleeping on the job. None of the employees that Jones offers for the proposition that younger employees were treated more favorably than Jones were similarly situated to Jones. The evidence does not reflect that they had the same supervisors as Jones. Nor does it reflect that the younger employees engaged in the same conduct as Jones, allegedly intimidating a student as well as sleeping on the job. Nothing in the record indicates that the decision makers who terminated Jones' employment, Stuckey and White, were ever made aware of the accusations Jones makes about these employees. Jones has failed to provide admissible evidence that her age was a contributing factor in MINACT's decision to terminate her employment. As a result, I will grant MINACT's motion for summary judgment on

Jones' age discrimination claim.

*Service letter claim*

After her employment was terminated, Jones requested MINACT to provide her with a service letter pursuant to § 290.140 R.S.Mo. MINACT failed to respond to that request. In her complaint, Jones seeks actual or nominal damages, as well as punitive damages for MINACTs failure to provide a service letter.

The Missouri Service Letter statute requires employers, in certain circumstances, to provide a letter on the employee's request "setting forth the nature and character of service rendered by such employee to such corporation and the duration thereof, and truly stating for what cause, if any, such employee was discharged or voluntarily quit such service." § 290.140(1) R.S.Mo. Furthermore, "any corporation which violates the provisions of subsection 1 of this section shall be liable for compensatory but not punitive damages but in the event that the evidence establishes that the employer did not issue the requested letter, said employer may be liable for nominal and punitive damages; but no award of punitive damages under this section shall be based upon the content of any such letter." § 290.140(2) R.S.Mo.

"The failure to give a proper service letter is an invasion of the employee's legal rights, and an employee is entitled to a judgment for nominal damages without

proof of any actual damages." Callantine v. Staff Builders, Inc., 271 F.3d 1124, 1132 (8th Cir. 2001). Although the statute provides for punitive damages in the event an employer fails to issue a requested service letter, the mere failure to respond to the request is, standing alone, an insufficient basis to award punitive damages. Id. "In addition to the failure to issue a service letter, a plaintiff must prove the presence of malice. A plaintiff may show legal malice by showing the defendant did a wrongful act intentionally without just cause or excuse." Id. (internal citation omitted). "Submission to the jury of the punitive damage issue is proper where a jury could reasonably conclude that deficiencies in a service letter were due to reckless indifference for the rights of the plaintiff under the statute." Id.

In her opposition to summary judgment responses, Jones concedes that she does not seek actual damages, her claim is limited to nominal and punitive damages. The only evidence that Jones provides of MINACT's violation of the service letter statute is that she requested a letter and that she did not receive a response. This limited evidence is insufficient to support a claim for punitive damages. Callantine v. Staff Builders, Inc., 271 F.3d at 1132. Without more, MINACT's motivation for failing to respond to Jones' request is based on conjecture which is insufficient to support a finding of reckless indifference or malice. As a result, I will grant MINACT's motion for summary judgment on Jones' claim for punitive damages

under her service letter violation claim.

Accordingly,

**IT IS HEREBY ORDERED that** Defendant Minact, Inc.'s motion for summary judgment on Plaintiff Debra Jones' age discrimination claim in Count I of her Second Amended Complaint [42] is **GRANTED**.

**IT IS FURTHER ORDERED that** Defendant Minact, Inc.'s motion for partial summary judgment on Plaintiff Debra Jones' service letter claim in Count II of her Second Amended Complaint [42] is **GRANTED**.

**IT IS FURTHER ORDERED that** Plaintiff Debra Jones' motion to strike [49] is **DENIED**.

_____
RODNEY W. SIPPEL
UNITED STATES DISTRICT JUDGE

Dated this 7th day of December, 2015.